**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JUDY L. LAPE,**

     **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:06-cv-557-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

     **Defendant.**
_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### *I. BACKGROUND*

**A.** **Procedural History**

Plaintiff filed for a period of disability, DIB benefits on July 8, 2002. R. 51-53. She alleged an amended onset date of disability on January 1, 2003, due to a form of muscular dystrophy, McArdle's disease. Her application was denied initially and upon reconsideration. R. 38-41. Plaintiff requested a hearing, which was held on June 15, 2004, before Administrative Law Judge

James R. Ciaravino (R. 274-313); he issued a denial of benefits on October 24, 2004. R. 218-27. Based on Plaintiff's request for review of that hearing decision (R. 228), on June 10, 2005, the Appeals Council vacated the ALJ's decision and remanded Plaintiff's claim for further proceedings, mainly of the vocational aspects of the claim. R. 230-31. A supplementary hearing was held on November 15, 2005 before John D. Thompson, Administrative Law Judge (hereinafter referred to as "ALJ"). R. 314-63. In a decision dated December 19, 2005, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 10-25. Plaintiff timely filed a Request for Review of the ALJ's December 18, 2005 decision. R. 8. The Appeals Council denied Plaintiff's request on March 3, 2006. R. 5. Plaintiff filed this action for judicial review on April 25, 2006. Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of a form of muscular dystrophy, McArdle's disease, fatigue, pain, muscle weakness, back pain, and concentration and memory problems. R. 33, 38. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff had a history of McArdle's Disease, hypothyroidism and low back pain, which were "severe" medically determinable impairments, but were not have impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 15. Plaintiff was forty-three years of age on the date of the ALJ's hearing decision. R. 10, 14, 51, 281, 318-19. She had a high school education and past relevant work experience as a general clerk, service writer, cashier, vendor, advertising supervisor, and advertising distributor. R. 14, 22, 69, 74, 77-84, 293, 319, 323-27, 353-54.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a reduced range of sedentary work. R. 22; 24, Finding 6. In making this determination, the ALJ found that Plaintiff's allegations regarding her limitations were not totally credible for the reasons set forth in the body of the decision.[1] R. 20. Considering Plaintiff's vocational profile and RFC, the ALJ determined that Plaintiff could not return to her past relevant work. R. 22. Based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff was capable of making a vocational adjustment to other kinds of sedentary work and she could perform work existing in significant numbers in the national economy. R. 22. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 23.

Plaintiff now asserts four points of error. First, she argues that the ALJ erred by finding she had the RFC to perform sedentary work contrary to treating doctors' statements. Second, she asserts that the ALJ erred by posing a hypothetical to the VE that did not adequately reflect her limitations. Third, she argues the ALJ erred by improperly applying the pain standard. Fourth, she contends the ALJ erred in evaluating her credibility. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C.

---

[1] Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several specific inconsistencies between her reported limitations, medical findings and conservative treatment, with not treatment from any specialist, and Plaintiff's activities of daily living, including her ability to work on a part-time basis. R. 20.

§ 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her

from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

### *III. ISSUES AND ANALYSIS*

**A.     RFC and the treating physician's opinion.**

Plaintiff claims that the ALJ should not have found her able to perform any sedentary work in light of limitations in reaching, handling and fingering assigned by Dr. Creamer, her treating physician. The Commissioner contends the ALJ properly considered Dr. Creamer's opinion, together with the other evidence, in assessing Plaintiff's RFC.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff contends the ALJ erred by not adequately considering the opinion of her treating physician, Dr. Creamer. In particular, Plaintiff contends the ALJ should not have found "no objective evidence of any limitation in reaching, handling and fingering" because Dr. Creamer assessed Plaintiff as limited to occasional reaching, handling and fingering. R. 21. Plaintiff argues that she consistently indicated she had problems with her hands, including problems dropping items. R. 144. Plaintiff also points to the results of a nerve conduction test, administered due to "continued weakness in the upper extremities," which revealed an "[e]lectrodiagnostic study consistent with McArdle's disease, with associated chronic myopathy." R. 156-57. Although the ALJ did correctly note that this test did not reveal any "evidence of peripheral neuropathy in the upper extremities," Plaintiff contends that the ALJ erred in totally ignoring the other findings she cites. R. 21.

The Commissioner argues that Plaintiff has misinterpreted this aspect of Dr. Creamer's opinion as an opinion that Plaintiff was limited to occasional reaching, handling, and fingering because Dr. Creamer did not indicate in his Physical Capacity Assessment form that Plaintiff was limited to reaching or handling only occasionally; he also indicated that Plaintiff had no limitation on feeling. R. 147. Unfortunately, the form, which does not appear to be one prepared by the SSA, asks whether certain activities (including reaching and handling) would be "affected by the impairment" rather than how often they would be affected, as in the prior question which spells out "frequently, occasionally, or never." R. 147.

Because of this ambiguity, the ALJ addressed the possibility that Dr. Creamer was opining that Plaintiff was limited to occasional reaching and handling, and rejected such limitations because "no evidence exists to suggest a loss of this kind of function to the hands or arms." R. 21. The ALJ found

there was no objective evidence of any limitation in reaching, handling or fingering, particularly because:

> Plaintiff's "current occupations (general clerk and service writer) require frequent reaching and handling and fingering which demonstrates her ability to do these kinds of tasks more often [than] assessed by Dr. Creamer. His progress notes do not support limitation in these areas to only "occasional." The internist consultative evaluation did not demonstrate significant problems or impairments. State agency assessments likewise did not support any total disability. Dr. Creamer's more recent letter and his rationale is inconsistent with virtually all of his own progress notes were he noted 5/5 muscle strength and intact sensation over a period of several years.

R. 21-22. Plaintiff contends that the ALJ should not have rejected Dr. Creamer's limitations on Plaintiff because he had thoroughly examined Plaintiff before reaching his conclusions in regards to her residual functional capacity and limitations, objective evidence supported his findings, and Plaintiff's 5/5 muscle strength testing "is only a transient phenomenon" because she can show muscle strength over a short period of time, but then her muscles fatigue easily and show diffuse weakness due to the McArdle's Disease. R. 265 (August 27, 2004).

Plaintiff contends that the ALJ "did not fully understand her medical condition" and then describes the history of her treatment of McArdle's disease since 1998 by Dr. Creamer and the deterioration in her condition since that time. R. 178-180. On December 4, 2002, Dr. Creamer opined that Plaintiff could carry up to five pounds, stand for a total of two hours a day, sit for a total of six hours a day, could sit without interruption for one-half an hour, but she could never climb, balance, crouch or crawl, only occasionally stoop and kneel, and "limited" ability to reach, handle, push and pull due to weakness and fatigue. R. 146-47. On August 27, 2004, Dr. Creamer wrote a letter to Plaintiff's attorney outlining the effects of McArdle's Disease on Plaintiff, in which he indicated that McArdle's Disease is a condition which effects the muscle strength, mobility and fatigue of the

muscle fibers. R. 265. Plaintiff points out that Dr. Creamer made this evaluation after treating Plaintiff periodically for six-years through the Muscular Dystrophy Association.

The ALJ credited the majority of Dr. Creamer's assessment; however, he rejected Dr. Creamer's limitations on Plaintiff's reaching and handling (or inability to perform a reduced range of sedentary work) in large part because it was contradicted by a more recent opinion from neurologists at the Mayo Clinic (including Dr. Petretska) who concluded on March 2, 2005 that most of the problems she was experiencing in 2005 – such as shortness of breath, facial swelling, palpitations, daytime somnolence, and back pain – were not directly associated with McArdle disease, but could be signs and symptoms of other disorders, such as hypertensive cardiomyopathy, COPD or sleep apnea. R. 269. As the ALJ cited for the Mayo Clinic's records in particular in rejecting Dr. Creamer's opinion:

> Dr. Petretska wrote a letter to Dr. Creamer stating the claimant had multiple medical conditions including hyperthyroidism [sic], possible sleep apnea or chronic obstructive pulmonary disease. She stated that overall, her neuromuscular examination showed normal strength in all extremities with some decreased sensation over the lateral femoral cutaneous nerve distribution and medial nerve distribution. *Dr. Petretska stated that she thought the McArdle disease at this point was not the main problem of the claimant's fatigue and paraesthesias.* She opined that the claimant might have sleep apnea with or without chronic obstructive pulmonary disease (COPD) and the palpitations might be because of her thyroid condition. The paraesthesias were thought to be probably secondary to meralgia paresthetica and the and the numbness in the hands might be due to bilateral carpal tunnel syndrome, which occurs with hypothyroidism. Dr. Petretska recommended the claimant establish care with a local internist and family practice specialist to investigate the cause of her multiple complaints (palpitations, shortness of breath and fatigue) which could be signs of several medical problems.

R. 19 (emphasis added). The ALJ's determination was supported by substantial evidence.

The treating physician's records are contradicted by the records of the specialist, Dr. Petretska, who opined, as the ALJ noted, that Plaintiff's problems were not due to McArdle's disease (as opined

by Dr. Creamer), but were the result of several other conditions, including hypothyroidism which was "uncontrolled" because Plaintiff did not have a primary care physician. R. 267-69.

In the only other medical report by an examining physician, Dr. Ranganathan, the consultative examiner, he noted in September 2002 (within a few months of Plaintiff's amended alleged onset date of January 1, 2003) that Plaintiff's grip was 5/5, her gross and fine manipulations were well preserved, and her motor strength was 5/5; repetitive muscle testing did not produce fatigue. R. 185, 268. The state agency physicians who reviewed the evidence opined that Plaintiff had no limitations on reaching and handling. R. 191, 199. It is clear that the medical evidence did not support restricting reaching and handling to occasionally, as Plaintiff argues that Dr. Creamer intended. Moreover, the fact that Plaintiff continued to work after her alleged onset date at a job that required frequent reaching, handling, and fingering undermines her claim that she could only occasionally do these tasks. R. 55, 244-45, 247. Accordingly, good cause existed for the ALJ's failure to credit Dr. Creamer's opinion regarding limitations on Plaintiff's ability to reach and handle.

### B. Whether the ALJ's hypothetical included all of Plaintiff's impairments

Plaintiff contends that the ALJ's finding that Plaintiff could perform a reduced range of sedentary work, is based on the vocational expert's testimony in response to a defective hypothetical which did not reflect the actual limitations the RFC assigned by the ALJ. The Commissioner contends that the ALJ properly relied on the testimony of the VE to find that Plaintiff had the RFC to perform other sedentary work existing in the economy.

At step four of the five-step sequential evaluation process, the ALJ must determine whether or not the claimant is able to return to his or her past relevant work. If the claimant is found to be able to perform the duties of her past relevant work, then he or she is considered not disabled and therefore

ineligible for benefits. The claimant bears the burden of proving the inability to perform his or her previous work. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). The claimant must show the inability to do the type of work performed in the past, not merely the specific job he or she held. *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986). The ALJ must consider all of the duties of the past work and evaluate the claimant's ability to perform those duties in spite of the impairments. *Lucas*, 918 F.2d at 1574 n. 3.

At the hearing in this case, the ALJ asked the VE to assume an individual with the following limitations: could sit for a total of six hours; stand or walk for a total of two hours; lift five pounds both frequently and occasionally; could not climb, balance, crouch, or crawl; could occasionally bend, stoop, and kneel; could frequently reach and handle; pushing and pulling was limited to five pounds; no work around unprotected heights, dangerous machinery or extremes in temperature, chemicals, fumes, or humidity; and the individual would need to use a cane for walking more than twenty or thirty feet. R. 354-55. The VE testified that Plaintiff was capable of performing work as an information clerk, a telemarketer, an appointment clerk, and a receptionist. R. 356. The VE testified that the jobs, although classified as sedentary work, would not require the individual to lift more than five pounds. R. 356-57.

In the second hypothetical, the ALJ asked the VE to assume Plaintiff could sit for four hours a day, stand for four hours a day – but must be allowed to change positions between sitting and standing and walking at least every thirty minutes or less – could lift up to ten pounds occasionally and five pounds frequently. R. 357. The VE testified that the sit/stand option would not preclude the three of the four jobs previously listed, but would erode the numbers of the telemarketer, and add the positions of surveillance system monitor and a charge account clerk. R. 357-58.

Plaintiff contends that the ALJ's hypotheticals improperly omitted the limitation discussed above, *i.e.*, occasional reaching or handling, as posed by Plaintiff's attorney at the hearing. As explained above, the Court has already found that the ALJ's rejection of a reaching/handling limitation to "occasional" was based on substantial evidence; thus, omission of it in the hypothetical was also based on substantial evidence.

Plaintiff also contends that the ALJ's hypotheticals were deficient because neither one required the VE to assume, as determined by the ALJ, that the claimant was limited to six hours sitting (thirty minutes without interruptions) and two hours standing (fifteen minutes without interruption), as the ALJ had determined was Plaintiff's RFC. The Commissioner responds that the hypotheticals *did* include the Plaintiff's RFC as determined by the ALJ. The Court agrees that Plaintiff's argument is a red herring – it focuses on the wrong question. The ALJ modified the first hypothetical and then said, "[L]et me just ask, with regard to the . . . four jobs that you listed . . . would these jobs be adversely impacted with a sit/stand option?" R. 357. The VE then testified that, even with a sit/stand option, the individual could perform the sedentary jobs of information clerk and surveillance system monitor and other "position neutral" jobs would be check cashier, and charge account clerk, all positions representing a significant number of jobs in the national economy. R. 354-58. The ALJ's hypotheticals and his reliance on the VE's testimony was based on substantial evidence.

### C. Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating her pain due to muscular dystrophy. She also argues that the ALJ erred by finding her subjective complaints credible only to the extent she is limited to a reduced range of sedentary work. She contends that the record demonstrates her

credibility and that the ALJ failed to provide adequate and specific reasons for discrediting her complaints.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 19. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Moreover, the ALJ complied with those standards. He obviously determined that Plaintiff had an objective medical condition that could give

rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. In that respect, immediately after discussing Plaintiff's RFC, the ALJ stated,

> The undersigned finds the claimant's testimony is not entirely credible. While she has a medical condition that can produce some periodic pain, the objective findings are not so severe that they should prevent the performance of all work-related physical activity. the claimant testified that she became unable to work due to Muscular Dystrophy. However, the objective medical evidence of records shows that Dr. Creamer treated the claimant extremely conservatively because of mostly unremarkable physical examinations and observed she was in no distress. In May of 1998, the only medication the claimant took was Synthyroid for her hypothyroidism. Dr. Creamer stated her McArdle's disease was stable based upon his examination and on previous reports. He recommended she continue her activities and a mild exercise program as well as continue working. Dr. Shanmugham reported an MRI was negative. He agreed that she had poor balance and ataxia, but these were not usually symptoms for this condition. Dr. Creamer reported the claimant began taking vitamin supplements which increased her energy level and allowed her to continue her activities in the home and community. Ms. Lape desired to start an exercise program, to which Dr. Creamer agreed. He continued to recommend she continue her activities, exercise and employment. On December 4, 2003, Dr. Creamer performed an assessment of an ability to do work activities wherein he basically stated the claimant could perform a reduced range of sedentary work. In January of 2004, Dr. Creamer again urged the claimant to see a specialist for her thyroid disorder and only continued her on her current medications. In April of 2004, Dr. Creamer reported her muscular dystrophy was stable with no medical changes since her last visit; there [were] no obvious concerns/issues. the claimant was working part-time and was able to perform all levels of self-care independently. Dr. Petretska reported diagnostic studies confirmed the claimant did indeed have McArdle disease. She stated that the claimant had other multiple medical conditions that were manifested by the claimant's many symptoms. For example, she opined that the claimant might have sleep apnea with or without chronic obstructive pulmonary disease and that the palpitations might be because of her thyroid condition. Dr. Petretska also recommended that the claimant establish care with a local internist and family practice specialist to investigate the cause of her multiple complaints which could be signs of several medical problems. There is no documentation in the records that indicates the claimant followed Dr. Creamer's or Dr. Petretska's advice to seek out the services of specialist in any of the areas of expertise they recommended.

> Ms. Lape also testified that she became unable to work due to unremitting severe back pain. However, the medical evidence of record reveals the claimant sought treatment from Saxon Family Practice for back pain, but lumbosacral spine x-rays were normal so she was only prescribed anti-inflammatory and muscle relaxant medications. Dr. Creamer reported she only complained of intermittent joint pain in August of 2000 and she expressed a desire to exercise; to which he agreed and in fact recommended she continue with her exercise, her activities and employment. As of October of 2001, there was only tenderness in the lumbar paraspinal region and Dr. Creamer again recommended she continue her activities, exercise and employment. In November of 2001, Dr. Creamer prescribed Doxepin which she took with Naprosyn. Ms. Lape reported this decreased her pain. Dr. Creamer adjusted her dosage of Doxepin and prescribed other pain medications but still advised the claimant to continue her activities, exercise and employment. In March of 2002, Dr. Creamer prescribed Ultram due to the intolerable side effects of Trazadone and ordered an MRI of the lumbosacral spine, which was unremarkable. Thus, he continued to treat the claimant conservatively. Dr. Ranganathan reported an MRI of the lumbar sacral spine was negative and reviewed results of an electrodiagnostic studies were positive for McArdle's disease with associated chronic myelopathy. He noted the claimant was able to walk without a cane, could heel/toe walk, sit comfortably and remove her clothing. he diagnosed her with myofascial pain and determined she could perform a reduced range of light and sedentary work. Dr. Creamer reported only tenderness with palpation of the lumbar facets and otherwise said she had an unremarkable physical examination. Moreover, the claimant has neither sought nor received any treatment or evaluation from an orthopedic specialist, physical therapist, physiatrist or rheumatologist nor has she undergone any other treatment modalities such as pain management, injections, chiropractic treatment or surgery.
>
> The claimant's activities of daily living further serve to cast doubt on her overall credibility. The claimant admitted to Dr. Ranganathan that she cooked, loaded the dishwasher and performed laundry tasks. Moreover, the claimant drove herself to his office. The claimant testified that she worked four days a week and drove 16 miles round trip. She stated she went to the grocery store, did laundry, folded clothes (to include sorting them) and placed them in the washer. She also made beds albeit with difficulty and visited friends/family. Such a wide range of activity is not in keeping with a claim of complete disability. Moreover, the claimant desired to begin an exercise program and Dr. Creamer agreed. In fact, he continued to urge her to work, be active and exercise. In fact, none of the claimant's physicians have stated she is unable to work.

R. 20-21 (internal citations omitted).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.

-14-

*Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff contends that the medical evidence indicates that claimant did have a medical condition, McArdle's Disease and chronic myopathy, that could reasonably be expected to cause pain, (R. 113-14, 156, 376) and the pain she experienced, according to Dr. Creamer, was the result of these impairments. She points to her consistent complaints of pain during examinations and the fact that Dr. Creamer continued to prescribe pain medication. R. 95, 96, 98, 103, 105, 107, 117, 138, 144, 145, 150, 153, 154, 155, 156, 158, 163, 257, 261, 267. However, as the ALJ explained in the extensive analysis quoted above, the neurologist Dr. Petretska attributed claimant's symptoms to other medical conditions, such as sleep apnea and chronic obstructive pulmonary disease, or her thyroid condition, and not McArdle's disease.

Plaintiff also contends that in considering Plaintiff's activities of daily living, the ALJ should not have ignored the testimony from the claimant in regard to how she performs these activities, such as her ability to work only part-time and come in late or leave early when she is not feeling well. R. 348. She also qualified other responses about activities in that, when she went to the grocery store, she only picked up a few items or that her husband did most of the hard chores, but she could "sometimes" sort the clothes by putting them one-by-one into the washer, but could not bend to put them in the dryer. R. 343-44.

The Commissioner points to Plaintiff's admissions that she performed various household chores, drove, went grocery shopping, and visited friends and family, which are not indicative of the disabling pain and other symptoms she alleged. R. 21, 91-97, 184, 295, 320, 342-46. As the ALJ pointed out, Plaintiff had work activity after her alleged onset date which the Commissioner contends provides further evidence undermining her allegations of disabling limitations. R. 55, 244-45, 247, 249-55, 281-88, 320-23, 362. According to SSA records, Plaintiff actually made $8,178 dollars in 2003, the year of her amended onset date (January 1). The reason her alleged onset date was changed from July 2002 to January 1, 2003 was because she had substantial gainful activity ("SGA") exceeding the maximum amount allowed for 2002. R. 327-28. For 2003, the maximum was $800 per month, Plaintiff made $681. For 2004, Plaintiff's earnings increased to $8,400 or $700 per month, also below the SGA level, but the ALJ is allowed to take into account Plaintiff's ability to work part-time in assessing her credibility regarding her pain levels.

The ALJ offered specific reasons for discrediting Plaintiff's subjective complaints, including inconsistencies between her reported limitations and the examination findings and conservative treatment, without treatment from any specialist, and Plaintiff's activities of daily living, including her ability to work on a part-time basis and other activities of daily living. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. The ALJ's reasons are supported by substantial evidence.

### *IV. CONCLUSION*

The record in this case shows that Plaintiff does not enjoy full health and that her lifestyle and activities are affected by her ailments to some degree. The ALJ was aware of and considered the extent of Plaintiff's impairments as reflected in the medical record. For the reasons set forth above,

the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

  **DONE** and **ORDERED** in Orlando, Florida on June 26, 2007.

*David A. Baker*

       DAVID A. BAKER
    UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record